# COURT OF APPEALS.

## July 12, 1922.

## THE PEOPLE v. ISAAC E. FERGUSON.

### (234 N. Y. 159.)

(1) CRIMINAL ANARCHY—JOINT INDICTMENT OF DEFENDANTS FOR PUBLISH-ING MANIFESTO ADVOCATING OVERTHROW OF ORGANIZED GOVERNMENT, IN VIOLATION OF STATUTE (PENAL LAW, §§ 160, 161)—WHEN CHARGE TO JURY IN WORDS OF STATUTORY RULE OF EVIDENCE (PENAL LAW, § 164) ERRONEOUS.

Upon the trial of defendants jointly indicted with others for the offense of criminal anarchy for preparing, publishing and circulating a manifesto in a paper called *The Revolutionary Age*, which advocated the overthrow of organized government by force and violence and unlawful means, the trial judge, in charging the jury, read the statute (Penal Law, § 164) which purports to enact a rule of evidence that provides that "Every editor or proprietor of a * * * newspaper * * * and every manager of a partnership or incorporated association by which * * * newspaper is issued, is chargeable with the publication of any matter contained in * * * newspaper;" and, also, in connection therewith called attention to Federal and State statutes.requiring newspapers to publish the names of their owners, or if owned by an unincorporated joint stock association, the names of the partners, managers and owners of the association. Clearly, therefore, the jury was given to understand that as bearing on the responsibility of the defendants for the publication in question they might consider the presumption of guilt raised by section 164. In the absence of any direct proof connecting either of the defend-ants with the manifesto this was material and erroneous. Concededly neither defendant was the owner of *The Revolutionary Age* and neither in any just sense was a proprietor. Although the ownership and publi-cation of the paper had been turned over to the Left Wing of the Socialist party, a voluntary unincorporated association, of which defendants were members and members of the National Council thereof, this did not make either of them a proprietor within the meaning of the statute or managers of a partnership or unincorporated association.

(2) SAME.

Although *The Revolutionary Age* did publish the names of its editors, stated that it was owned and controlled by the Left Wing of the Socialist

party and gave the names of the National Council thereof, that does not warrant the assumption that the paper was owned by an unincorporated joint stock association within the meaning of the statute (General Business Law, § 330; Cons. Laws, ch. 20) and that, therefore, the provisions of section 164 of the Penal Law apply to the defendants.

*People* v. *Ferguson,* 199 App. Div. 642, *ante,* reversed.

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 20, 1922, which affirmed a judgment, rendered at a Trial Term for the county of New York, convicting the defendant of the crime of criminal anarchy.

*Isaac E. Ferguson* and *Joseph R. Brodsky,* for appellants. The court erred in invoking section 164 of the Penal Law in the charge to the jury. (People v. Cannon, 139 N. Y. 42; Luria v. United States, 231 U. S. 9; Marx v. Hanthorn, 148 U. S. 172.)

*Joab H. Banton, District Attorney (John Caldwell Myers,* of counsel), for respondent. Section 164 of the Penal Law is constitutional and the court did not err in reading it to the jury. (People v. Adams, 176 N. Y. 351; Adams v. N. Y., 192 U. S. 585; People v Cannon, 139 N. Y. 42; Fong Yue Ting v. U. S., 149 U. S. 698; Marks v. Hanthorn, 148 U. S. 172; Baily v. Alabama, 219 U. S. 219; Luria v. U. S., 231 U. S. 9, 25.)

ANDREWS, J.:

The appellants Charles E. Ruthenberg and Isaac E. Ferguson were jointly indicted with others for the offense of criminal anarchy in that they procured, prepared, composed, circulated, distributed and caused to be circulated, distributed, printed, published, edited, sold and displayed the manifesto which has been referred to in People v. Gitlow and People v. Larkin, decided herewith. If the defendants personally were guilty of

any of the acts charged against them, or if they aided or abetted in their commission, or directly or indirectly counseled, commanded, induced or procured another to commit them (Penal Law, sec. 2), and if, as has been found as a fact, the manifesto so published advocated the duty, necessity or propriety of overthrowing or overturning our organized government by force or violence, or by any unlawful means (Penal Law, sec. 161), the conviction was proper. In view of the unanimous affirmance we may not look to the testimony to determine whether there was any basis for the finding of the jury against the defendants. (People v. Schmidt, 208 N. Y. 521; People, v. Schultz, 205 N. Y. 587.) Upon this review we are confined to exceptions to the admission or rejection of testimony, to the charge and to refusals of requests to charge not based on the theory that the evidence was insufficient to justify a conviction.

The defendants lived respectively in Clevelalnd and in Chicago and both were members of the Socialist party. In that party a contest between the more and the less radical elements developed. To effectively organize the former a conference of those in sympathy with its views was called in New York, June 21, 1919. To it the defendants came as delegates. The conference lasted until June 24th. Ruthenberg returned to Cleveland on June 23d and Ferguson to Chicago on the 26th. At the first meeting of the conference a committee was created to report a program of action for the so-called Left Wing of the Socialists and a manifesto as to their principles. The two defendants were chosen members of this committee. They were also elected to the National Council of the Left Wing consisting of nine members. This seems to have been a temporary directing body to conduct a campaign of organization prior to the general convention of the Socialist party to be held some time during the summer. At a meeting of this committee two proposed manifestos were considered. One was rejected. The second, prepared by Ferguson, which contained little of the

matter said to be objectionable, was laid aside and the subject was postponed. The manifesto was never again considered by the committee. On the last day of the conference the whole matter was referred to the National Council with power. Ruthenberg was then in Cleveland and neither he nor Ferguson ever met with the National Council until after the manifesto in question was published. The latter, however, was present with some of its members on June 26th when there was had an informal discussion as to the choice of a secretary of the council and also as to the staff of a paper called *The Revolutionary Age*.

This paper had been published in Boston. In New York was another called the *Communist*. The former had been turned over to the conference after Ruthenberg left New York. It seems that the two were merged and the existing editors of the former were retained in charge.

After Ferguson left on the 26th a subcommittee of three was appointed by the council to prepare the manifesto. It was formulated and issued between June 26th and July 5th, and on the latter day it was printed in *The. Revolutionary Age*. Both of the defendants saw it for the first time thereafter, and neither took any personal action looking to such publication.

We have no concern with the belief of the defendants or the theories, however unsound or dangerous or criminal in tendency to which they adhere. We have no concern with articles, if there are such, published by them at other times advocating criminal anarchy except as such articles are useful in throwing light upon the intent or meaning of the manifesto in question after it has been shown that the defendants are connected with the publication of the latter. They are connected with it if they wrote it or if they printed, published, issued or sold it or counseled or induced another to commit any of those acts. We fail to find, however, any direct evidence to that effect. As, however, there has been a unanimous affirmance of the convic-

tion we cannot, as we have said, review this question if the jury were permitted to reach the result they did under proper instructions or under instructions which if improper were not excepted to. We do not think, however, that such was the case.

Section 164 of the Penal Law purports to enact a rule of evidence. " Every editor or proprietor of a * * * newspaper * * * and every manager of a partnership or incorporated association by which a * * * newspaper * * * is issued, is chargeable with the publication of any matter contained in such * * * newspaper." The trial judge read this section to the jury and in connection with it called attention to federal and State statutes requiring newspapers to publish the names of their owners, or if owned by an unincorporated joint stock association the names of the partners, managers and owners of the association. Later on at their request he submitted to the jury sections 160, 161 and 164 of the Penal Law as applicable to the case. The submission of section 164 was objected to as immaterial and an exception was taken to the action of the court.

Clearly, therefore, the jury was given to understand that as bearing on the responsibility of the defendants for the publication in question they might consider the presumption of guilt raised by section 154. In the absence of any direct proof connecting either of them with the manifesto this was material and it was erroneous. Concededly neither defendant was the editor of *The Revolutionary Age.* Neither in any just sense was a proprietor. Apparently the paper had been turned over to the Left Wing of the Socialist party, a voluntary unincorporated association with some thousands of members. The somewhat hazy rights each member of the party might have in the paper under these circumstances did not make him a proprietor within the meaning of the statute, and being a voluntary association, even as members of the National Council, the defend-

ants were not managers " of a partnership or of an incorporated association."

The district attorney calls our attention to section 330 of the General Business Law (Cons. Laws, ch. 20) requiring the names of its officers to be published when a newspaper is owned by a joint stock association and he asserts that in view of this section, section 164 of the Penal Law is applicable to the defendants before us. His course of reasoning seems to be that where a newspaper is owned by a partnership, limited partnership or unincorporated joint stock association the names of the partners or officers must be published. *The Revolutionary Age* did publish the names of its editors, stated that it was owned and controlled by the Left Wing of the Socialist party and gave the names of the National Council. Therefore, he claims we must assume as it was not owned by a partnership that it was owned by an unincorporated joint stock association. As an unincorporated joint stock association includes an association having written articles and capital stock divided into shares it is not unlike a corporation. Consequently section 164 should be held to apply to the defendants. We do not think that we would be justified in giving such an interpretation to the plain words contained in the statute.

As in our view as the jury was thus wrongfully allowed to infer that the defendants were connected with the article in question by reason of the presumption declared by this section and as in view of the absence of other evidence this error was decisive of the result reached by them, we do not need to consider the other important questions raised by the record before us.

The judgment appealed from must be reversed and a new trial granted.

HISCOCK, Ch. J., McLAUGHLIN and CRANE, JJ., concur with ANDREWS, J.; CARDOZO and POUND, JJ., concur in the

result upon the ground that the court erred in its instructions with reference to the effect of section 164 of the Penal Law, and also upon the grounds stated in the dissenting opinion of POUND, J., in People v. Gitlow, decided herewith; HOGAN, J., dissents.

Judgment reversed, etc.